UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON ALLEN, | No. 2:18-cv-00929-MCE-KJN |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| CREDIT COLLECTION SERVICES, INC., | |
| Defendant. | |

Through the present action, Plaintiff Cameron Allen ("Plaintiff") seeks damages from Defendant Credit Collection Services, Inc. ("CCS" or "Defendant"), a collection agency, under the Fair Debt Collection Practices Act, 15 U.S.C.S. §§ 1692 et seq., ("FDCPA") and its California counterpart, the Rosenthal Act, Cal. Civ. Code §§ 1788 et seq, ("Rosenthal Act").[1]  ECF No. 1.  According to Plaintiff, the telephone calls he received from CCS rose to the level of conduct intended to "harass, oppress, or abuse" him in connection with the collection of his debt.  Compl., ECF No. 1 at 4-5.  Presently before the Court is Defendant's Motion for Summary Judgment pursuant to Federal Rule

---

[1] While Plaintiff's Complaint, filed April 16, 2018, also included a cause of action claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), Plaintiff failed to offer any opposition to Defendant's summary judgment request as to that claim and therefore appears to have abandoned any relief under that statute.  See Def's Reply, ECF No. 13 at 6:21-7:5.  Consequently, Plaintiff's TCPA claim will not be further analyzed in this Memorandum and Order.

1

of Civil Procedure 56. ECF No. 9. For the reasons stated below, Defendant's motion is GRANTED.[2]

## BACKGROUND[3]

Plaintiff entered into a contract with Comcast, a telecommunications company, for the provision of cable services. When Plaintiff purportedly failed to pay the amounts due under that contract, Comcast turned Plaintiff's unpaid cable bill over to CCS for collection on October 24, 2016. Stmt. Undisputed Facts ("SUF"), ECF No. 13-1 ¶ 1. Between November 4, 2016 and January 3, 2017, a period of about two months, CCS' call logs show that it placed eight calls to Plaintiff's cellular telephone number, which he had previously provided to Comcast. Ex. C, ECF No. 11-4 at 4. The calls were placed about a week apart and CCS records show that its representatives only spoke to Plaintiff twice during this period. Id. Specifically, on November 10, there was a brief exchange before the call was disconnected. SUF ¶ 3. This was followed up later that day with a call from Plaintiff disputing that he owed anything on his account and stating that he would follow up with Comcast. Id. ¶ 4. CCS made recordings of both calls, which were offered as evidence in support of its motion. See Decl. of Jeffrey Stoddard, ECF No. 9-4, Exs. D, E.

In neither call did Plaintiff tell CCS to stop calling him. SUF ¶¶ 3-4. Between January 10, 2017 and May 19, 2018, CCS placed seven more calls to Plaintiff, all of which went unanswered. Ex. C at 5. The calls were made on average at a rate of about once a month. Id. All calls to Plaintiff were documented by CCS in detailed account notes which memorialized the date and time each call was placed, as well as the substance of any actual conversation with Plaintiff. Stoddard Decl., Ex. B.

---

[2] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. See E.D. Cal. Local R. 230(g).

[3] The following recitation of facts is taken, sometimes verbatim, from Defendant's Statement of Undisputed Facts.

Despite CCS' detailed records of its communications with Plaintiff, and despite the fact that neither the call log nor the actual recordings of the two completed call documents show any request by Plaintiff that CCS stop calling, Plaintiff nonetheless testified in his deposition that he in fact "mentioned on some [calls] for them not to call me anymore." Pl.'s Dep., ECF No. 11-2 at 26:2-3. Plaintiff was unable, however, to provide any further support for that very generalized statement other than to claim he asked CCS to stop somewhere "between November and January" of 2017. Id. at 26:20-21. Plaintiff has failed to indicate who he spoke with at CCS and admits he took no notes concerning the substance of any conversation. Id. at 20:25-21:1. The only additional corroboration he offered were various screenshots of an application he used to block unwanted calls, but those screenshots (Ex. I to the Stoddard Decl.) contain no identifying data linking any such calls to CCS.

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.

///

Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

### A.  FDCPA Claims

The FDCPA prohibits debt collectors from engaging in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt."  15 U.S.C. § 1692d.  Plaintiff's Complaint cites generally to that statute at ¶ 28, and more specifically goes on to allege a violation of subdivision (5), which prohibits "[c]ausing a telephone to ring or engaging any [person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."  Compl. ¶ 39.  According to Plaintiff, CCS violated these provisions "when it placed repetitive and harassing calls to Plaintiff's cellular telephone… even though Plaintiff informed Defendant they were calling an incorrect phone number and to stop calling him."  Id., ¶ 30.  Defendant contends that the evidence it has submitted entitles it to summary judgment as to Plaintiff's FDCPA claims, and maintains that in light of that evidence, Plaintiff's uncorroborated deposition testimony, without more, fails to raise any triable issue of material fact.

Plaintiff maintains that, despite CCS' call logs and telephone recordings of the two actual conversations its representatives had with Plaintiff concerning the underlying debt, CCS is not entitled to summary judgment because it violated the FDCPA by repeatedly calling his cellular telephone number after he verbally requested the calls to stop.  The Court disagrees.

It should initially be noted that Plaintiff makes no claim that he notified CCS in writing to cease any further communications.  Had such written request been made, there is no question that additional calls would have triggered FDCPA liability under 15 U.S.C. § 1692c(c), which prohibits further communication "[i]f a consumer notifies

5

[the] debt collector in writing . . . that the consumer wishes the debt collector to cease further communication with the consumer." Consequently, the viability of Plaintiff's FDCPA claims necessarily rests upon whether Plaintiff has shown that verbal request was made and that the collection calls continued unabated. The Ninth Circuit has recognized under the appropriate circumstances even an oral demand to stop calling can trigger liability under the FDCPA for harassing, abusive, and/or oppressive activities by a debt collector thereafter. Fox v. Citicorp Credit Services, 15 F.3d 1507, 1517 (9th Cir. 1994).

Plaintiff has nonetheless failed to adequately rebut the evidence submitted by CCS that no verbal request was made. As set forth above, Plaintiff offers only his vague and unsubstantiated deposition testimony to counter the solid evidence of calls made offered by CCS, and this is insufficient. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054 (9th Cir. 2002) (holding that a plaintiff's uncorroborated testimony is insufficient to overcome a motion for summary judgment). Plaintiff's self-serving testimony is not enough to create a triable issue of material fact. Plaintiff cannot say who at CCS he spoke with or on how many occasions such conversations occurred. He offers no notes of any conversations he purports to have had and cannot even say when the conversations took place any more definitely that that they occurred over a period of some three months. Moreover, Plaintiff's screenshot of a mobile application of blocked calls also does not demonstrate that he told CCS to stop calling him, since no link between any of the purportedly blocked calls and CCS has been established. Def.'s Mot. for Summ. J. ("MSJ"), ECF No. 9-2 at 5:18-19. What the evidence does show is that out of the fifteen calls placed, CCS' only two calls were answered have no record of Plaintiff asking that the calls cease, only that Plaintiff planned to dispute the charges with Comcast. SUF ¶ 4.

Additionally, fifteen calls in the span of seven months does not evidence any intent by CCS to annoy, harass, or abuse Plaintiff. See, e.g., Muzyka v. Rash Curtis & Assocs., No. 2:18-CV-01097 WBS, 2019 WL 2869114 at *6 (E.D. Cal. July 3, 2019)

(determining if there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the context and pattern of the calls). Additionally, in the case at bar there is no evidence that CCS called Plaintiff multiple times in a single day, called Plaintiff at odd hours, or called Plaintiff immediately after he had just hung up following an earlier call. While those circumstances can trigger FDCPA liability, they are simply not present here.

Indeed, this court's decision in Arteaga v. Asset Acceptance, LLC, 733 F. Supp. 2d 1218, 1229 (E.D. Cal. 2010) is more analogous here. In Arteaga, the collector called eighteen times in approximately five months. Id. at 1235. As here, there was no evidence that calls were made immediately after the Plaintiff hung up, no evidence that multiple calls were made in a single day, and no evidence that calls were made at odd times or to Plaintiff's employer family or friends. Id. at 1229. On those facts the Arteaga court granted summary judgment in the defendant's favor. Id. at 1233.[4]

While Plaintiff asserts that the determination of whether conduct in collecting a debt amounts to harassment should typically be a question of fact left to a jury (see Pl.'s Opp'n to MSJ, at 8:24-9:1-2), under the circumstances of the present matter that argument is unavailing. It bears noting that several courts have found insufficient evidence that a debt collector placed calls with the intent to harass or annoy for purposes of FDCPA liability, even where the volume of calls placed were far greater than that alleged here. See, e.g., Jiminez v. Accounts Receivable Mgmt., No. 09–CV-09070–GW(AJWx), 2010 WL 5829206, at *6 (C.D. Cal. June 24, 2010) (summary judgment granted on § 1692d claim where the defendant placed 69 calls over a 115-day period and placed more than 2 calls in one day). Tucker v. The CBE Group Inc., 710 F. Supp. 2d 1301, 1305-1306 (M.D. Fla. 2010) (57 calls placed to the plaintiff,

---

[4] The Court recognizes that, unlike the present case, in Arteaga there was not even a claim that the plaintiff had asked the debt collector there to stop calling. Given the fact, however, that the only evidence of that contention here is Plaintiff's own self-serving testimony as enumerated above, that difference is not dispositive.

7

including 7 calls in one day, did not constitute actionable harassment).  Def.'s Reply to Opp'n, ECF No. 13 at 3:3-9.  Accordingly, and for all the reasons set forth above, Plaintiff has failed to rebut Defendant's showing that it lacked any intent to harass, abuse, or annoy for purposes of incurring FDCPA liability.  Therefore, summary judgment in favor of CCS on Plaintiff's FDCPA claims is proper.

### B. Plaintiff's Claim Under The Rosenthal Act

Under the Rosenthal Act, "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j…" Cal. Civ. Code § 1788.17.  By expressly incorporating the standard under the federal FDCPA in defining liability for the same conduct under state law, the scope of both statutory schemes appears coextensive and the same analysis in assessing liability under the FDCPA also applies to the Rosenthal Act.  See Joseph v. J.J. MacIntryre Cos., LLC, 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002).  In addition, Plaintiff's complaint shows that he bases his Rosenthal Act claim on the same premise as his FDCPA claim; namely, that CCS engaged in excessive calling even after he verbally communicated for it to stop.  Since the Court finds that Plaintiff has failed to provide enough evidence to support the FDCPA claim, Plaintiff also fails to fulfill the elements of a Rosenthal Act claim and Defendant's request for summary adjudication as to that claim is also appropriate.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 9) is GRANTED.   Defendant is accordingly entitled to judgment as a matter of law with respect to Plaintiff's claims under the FDCPA and the Rosenthal Act.  Because Plaintiff did not contest the propriety of summary adjudication as to his remaining claim under the TCPA, Defendant is also entitled to judgment as to that claim.

///

1  The matter having now been concluded in its entirety, the Clerk of Court is directed to
2  enter judgment in Defendant's favor and close this file.
3      IT IS SO ORDERED.
4  Dated: February 18, 2020

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE